O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ARREOLA, ALFREDO PARRA, LILLIAN A. RAMIREZ, JAVIER A. GALINDO, PASCUAL CHAVEZ-RAMIREZ, JOSE RENTERIA, JESSE MORENO, MARIA PLIEGO, RENE PLIEGO, JOSE GARCIA,<br><br>          Plaintiffs,<br><br>     v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, a National Banking Association; PABLO ARAQUE,<br><br>          Defendants. | Case No. CV 11-06237 DDP (PLAx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Dkt. No. 10] |

Presently before the court is Defendant Bank of America ("the bank" or "Defendant")'s Motion to Dismiss.  Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following order.

**I.   Background**

Plaintiffs invested money in nonparty Financial Plus Investments, Inc. ("Financial Plus"), a "massive Ponzi scheme," run by nonparty Juan Rangel ("Rangel").  (Complaint ¶¶ 1, 14-22.)

Certain Plaintiffs also refinanced their homes with the assistance of Financial Plus, which arranged for straw buyers to purchase the homes, then deposited loan proceeds into Financial Plus accounts. (Id. ¶¶ 20-22.) Rangel and his associates encouraged working class, Spanish-speaking families to invest in by fraudulently promising unrealistically high rates of return and offering to save the homes of victims who were behind on their mortgage payments, but had equity in their homes. (Id. ¶¶ 1-2, 27.) All Plaintiffs lost some or all of their investments in Financial Plus. (Id. ¶¶ 14-22.)

Rangel was eventually convicted of several crimes related to his Ponzi and mortgage fraud schemes, including bribery of a bank official. (Id. ¶¶ 4,9,10.) Dony Gonzalez ("Gonzalez"), a branch manager at Bank of America, pleaded guilty to receipt of bribes by a bank official in connection with Rangel's scheme. (Id. ¶ 5.)

Rangel conducted banking activities on behalf of Financial Plus and related entities at two Bank of America branches managed by Gonzalez. (Id. ¶ 55.) Gonzalez accepted bribes from Rangel, and in return released holds on funds before the expiration of required waiting periods, authorized the deposit of funds into the account of entities not listed as payees, failed to file reports for large cash transactions, and falsified Verification of Deposit forms. (Id. ¶ 56.) Gonzalez's activities raised several internal "red flags" at the bank related to money laundering and fraudulent activities. (Id. ¶ 66, 67.) Nevertheless, the bank, including employees other than Gonazalez, continued to provide suspicious banking services to Rangel, including wiring large sums of money to Rangel's personal accounts in Mexico. (Id. ¶68.)

Plaintiffs filed this purported class action, alleging four causes of action against the bank for aiding and abetting breach of fiduciary duty, aiding and abetting fraud, aiding and abetting intentional misrepresentation, and aiding and abetting negligent misrepresentation.  The bank now moves to dismiss the complaint.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted.  Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise

3

"above the speculative level." <u>Twombly</u>, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

**III. Discussion**

    A.  Fiduciary Duty

Defendant first argues that Plaintiffs' first cause of action should be dismissed because Plaintiffs have not alleged that the bank owed them a fiduciary duty.  As Defendant acknowledges, courts in this district have held that a plaintiff need not show that an aider and abettor independently owed plaintiff a fiduciary duty. <u>Neilson v. Union Bank of California, N.A.</u>, 290 F. Supp. 2d 1101, 1137 (C.D. Cal 2003).

The bank next argues that Plaintiffs have failed to plead facts sufficient to show that Rangel owed Plaintiffs a fiduciary duty.  (Mot. at 8.)  The existence of a fiduciary relationship is a factual question, which depends on the particular characteristics of the relationship at issue.  <u>In re Daisy Systems Corp.</u>, 97 F.3d 1171, 1178 (9th Cir. 1996).  A fiduciary relationship may exist where one party voluntarily accepts the trust and confidence of another and enjoys a superior position of influence over the trusting party.  <u>Id.</u> at 1177.  Here, Rangel specifically targeted vulnerable, distressed homeowners who were facing the loss of their homes.  (Complaint ¶¶ 36, 38.)  By assuring his victims that they would be able to continue living in their homes, Rangel earned their confidence, which he then exploited to transfer title or divert loan proceeds to Financial Plus.  In appealing to

4

Plaintiffs' fundamental need for shelter and preying on their fear of losing their largest asset, Rangel went far beyond a mere arms-length transaction, and assumed a fiduciary duty to Plaintiffs.

While the question is closer with respect to victims of the Ponzi scheme alone, the Complaint alleges that Rangel intentionally preyed on members of his own community who, by dint of their limited language abilities, working-class origins, and lack of sophistication, were particularly vulnerable to and trusting of Rangel. (Complaint ¶¶ 2, 27.) While this issue may arise again at the class certification or summary judgment stage, Plaintiffs' allegations are sufficient to survive a motion to dismiss. See City of Hope Nat. Med. Center v. Genentech, Inc., 43 Cal.4th 375, 389 (2008) ("[F]iduciary obligations[] generally come into play when one party's vulnerability is so substantial as to give ruse to equitable concerns underlying the protection afforded by the law governing fiduciaries.").

B.   Knowledge

The bank further argues that Plaintiff's first claim must fail because Dony Gonzalez's actions cannot be imputed to the bank. While the bank is correct that knowledge acquired by an agent acting adversely to the principal is not attributable to the principal, the Complaint adequately alleges that Gonzalez was acting in the bank's interest. See Meyer v. Glenmoor Homes, Inc., 246 Cal.App.2d 242, 264 (1967). The Complaint alleges that Gonzalez was a high level branch manager, and that he committed wrongful acts while in the course of conducting official bank business. See Grigsby v. Hagler, 25 Cal.App.2d. 714, 715 (1938) ("[A] principal is liable to third parties . . . for the frauds or

other wrongful acts committed by such agent in and as a part of the transaction of [the principal's] business."). Gonzalez knew, at the very least, that the falsified Verification of Deposit forms were being used in connection with fraudulent mortgage applications.

Furthermore, the Complaint alleges that the bank itself, aside from Gonzalez's actions, ignored multiple "red flags," choosing instead to enjoy the benefits of its financial relationship with Rangel and his business entities. (Compl. ¶ 68.)  Plaintiffs allege that the bank knew that Rangel's business accounts involved the receipt of investor funds, knew of the multiple internal "red flags" that Rangel's banking activities triggered, and knew that Rangel was transferring money from investor-funded accounts to Rangel's personal accounts in Mexico. (Compl. ¶¶ 66, 68.)  A common-sense reading of these allegations, taken together, sufficiently establish, at this stage, that the bank had actual knowledge of Rangel's fraud.[1]

    C.   Aiding and Abetting Negligent Misrepresentation

The bank argues that Plaintiffs' claim for aiding and abetting negligent misrepresentation must be dismissed as a matter of law because aiding and abetting claims are limited to those based on intentional torts. (Mot. at 15.)  The bank provides no authority to support its contention, and a court in this district has explicitly held that, to the contrary, "an aider and abettor could knowingly further a misrepresentation that was negligently made by

---

[1] To the extent that the bank's arguments regarding claims two through four overlap with its arguments regarding claim one, the motion is denied for the reasons stated above.

6

another party." In re ZZZ Best Securities Litigation, No. CV 87-3574 RSWL, 1990 WL 132715 *13 (C.D. Cal. July 23, 1990); See also McKay v. Hageseth, No. C-06-1377, 2007 WL 1056784 *2 (N.D. Cal. April 6, 2007) ("California courts have relied on § 876 of the Restatement 2d of Torts, which expressly states that liability may exist for aiding and abetting negligent acts.").

D. Rule 9(b) Concerns

Lastly, the bank argues that Plaintiffs have not alleged a fraud claim against Rangel with sufficient detail to satisfy Federal Rule of Procedure 9(b). Rule 9(b) requires that the alleged circumstances of the fraud give defendants sufficient notice of the misconduct at issue to allow defendants to defend against the charge. Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009). The court is satisfied that the Complaint provides Defendant with sufficient details to allow for an informed defense.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: October 5, 2012

DEAN D. PREGERSON
United States District Judge